3-0-8-0-7-5-1. Daniel Hemminger. Appellant Harry Lee v. Kate Nehring, C.T. et al. at the late Richard Higgy. Okay. Mr. Lee. Again, my name is Harry Lee. I'm here on behalf of the plaintiff, Daniel Hemminger. Sitting at counsel's table is Darlene Soderberg, who is the child of Dr. Henry Spacey. Your Honor, there are several issues that were raised in this appeal and an additional issue that was raised in the response brief. I'm going to rely on my briefs on the jurisdiction issue and also on the 6-105 Tort Immunity Act issue, unless, of course, the Court has any questions regarding those matters. This morning I'm going to focus on Section 6-106A of the Tort Immunity Act and the statute of limitations argument. The allegations of plaintiff's complaint involved defendants' failure to correctly interpret passenger slides. The trial court found that the defendants were immune from liability for this conduct under Section 6-106A of the Tort Immunity Act. Essentially, the court said that these allegations constituted a failure to diagnose. However, a pap smear is not a diagnostic test. It's a screening test. And there's testimony, deposition testimony in this case, that actually cuts both ways. But there is testimony indicating that it is diagnostic and it's not a screening test. The trial court, however, believed that it fit within the definition of an investigation or part of the investigation or analysis of the nature or cause of a condition, situation, or problem. The problem with the use of that definition, however, is it's a non-medical definition from a non-medical dictionary. Well, what do you say the purpose of the test is? It's screening. It's screening for what? What's the purpose? It's okay not to screen them, so what? Well, that's a piece of the puzzle. It's one of the steps that a medical professional takes in order to determine what the diagnosis is. But it's nothing more, or I mean it's no more than a physical examination, which is also one of the steps, or history taking, which is also one of the steps. So it's one of the steps towards the diagnosis, but it is not the diagnosis. And our argument is that the statute addresses a specific type of conduct, and that conduct is a diagnosis, a failure to diagnose. This was not a failure to diagnose. The Tort Immunity Act, of course, is legislation in derogation of the common law, and it needs to be strictly construed. And I think under strict construction, the term diagnosis should be given its medical definition. And as I said, the medical definition is not an investigation or analysis. What is the medical definition? It's a determination of what the illness is, I think is what the medical definition is. An investigation, actually the definition of investigation or analysis comes from Webster's Third New International Dictionary. And it's kind of interesting because if you look at the example that's given in that dictionary for this definition, it has nothing to do with medical care. What it has to do with is, the example they use is heat flow measurements of the earth are diagnostic of the earth's condition. And that's the 1993 version, the one that was cited in the Michigan Avenue case, which is what the trial court here latched on to. While I was in the library, I had a chance to look at the 1996 version of that dictionary, and it retains that same example for that definition. And then I went online last week in preparing for this argument, and I discovered that they actually changed the example for that definition. Now the example for the definition is that it's diagnostic of engine trouble. So you can see that the definition that was selected by the trial court in this case was a non-medical definition for the word diagnosis, and it should not be used in interpreting what a failure to diagnose is. I think the only thing that should be considered here is what the medical definition of the term is, and what the medical definition of a pap smear is. And the medical definition of a pap smear, at least there's a genuine issue of fact, is that it is a screening test. I say at least because there is some testimony in the depositions where somebody referred to it as a cytological diagnosis. Well, it's not the pap smear, it's the reading and construction of the pap smear. In other words, looking and drawing a conclusion from what you see in the pap smear. But they don't draw the conclusion that there's cancer. The way cancer is diagnosed is through a biopsy. It's not diagnosed through a pap smear. That's sort of a step along the way. So I think if the court wants to consider diagnosis to include a step along the way, then I think the court needs to ask the additional question, what's the purpose of Section 6-105? Because 6-105 addresses physical examinations. Now, isn't this also part of the investigation or analysis? And if it is, then why have that as a separate section? And my answer to that question would be it's because the legislature had it in mind to provide immunity for only this particular type of activity. Conducting a physical exam or failing to conduct an adequate physical exam. And when it comes to 6-106, the legislature had it in mind to address only this particular type of activity, and that is a diagnosis or a failure to diagnose. So is a physical exam immune from failure to conduct a proper physical exam? Actually, an adequate physical exam is a failure to conduct an adequate physical exam. There's immunity for that. And, of course, we're not saying here that the pap smear... So is a pap smear a physical exam? We'll concede that the pap smear is a physical exam, and it was conducted. And we're not saying that it was an inadequate review of the pap smear. We're saying it's an incorrect review of the pap smear. That's the distinction that we're trying to draw. What is the distinction between inadequate and inaccurate? I think inadequate says that there is something insufficient. Some stuff was not taken during the exam. Incorrect is basically you just blew it. You just made a mistake. It was a miscall. So inadequate is the process was defective? The process was defective. And inaccurate is... The conclusion is wrong. The conclusion is wrong, yes, exactly. And that's your distinction? That's my distinction. I think the Willis case, I think a reliance on the Willis case is misplaced for the reasons I've discussed here. I believe that what the court was addressing in the Willis case was... Actually, it was a completely different factual allegation. It was a failure to communicate the findings of a certain test which implicated that there was lymphoma. That's not what transpired in this case. That's not what we're talking about in this case. So for that reason, I think that the trial court was wrong in finding that this particular conduct was immune under Section 6-106A. As far as the statute of limitations argument is concerned, the Wrongful Death Act issue in this case, the trial court found that there was no wrongful death claim because the deceased did not have a viable cause of action at the time that she had died. The language that the court relied on was Section 1 of the Wrongful Death Act, a language which requires that the deceased, had she not died, would have been entitled to maintain an action and recover damages thereof. I believe that what that language means is that the deceased would have had to have had an actionable injury at the point of her death for the personal representative to be able to bring a wrongful death claim. I believe that's all that the Supreme Court cases state, or that's what the Supreme Court cases state, with respect to the meaning of Section 1 of the Wrongful Death Act. Now the Malinowski case and the Rio v. Kim case out of the First District seem to stray from that, but if you look at the Supreme Court cases that they cite, for their conclusion, that the statute of repose negates the right to bring a wrongful death claim, you'll see in those Supreme Court cases that what is being addressed are situations where there was no cause of action, a cause of action had been released, judgment had been obtained on a cause of action. In one instance, there was a provision under the Michigan Workmen's Compensation Act that if you opt to become part of it and you receive compensation from your employer, you no longer have a cause of action, the cause of action passes to your employer. Another situation involved an amendment to the Motor Vehicle Act, where a passenger in a vehicle was not allowed to bring a cause of action, except in the case of willful and wanton conduct. And another case involved a situation where it was a question of whether the Dram Shop Act allowed the recovery that was being sought, and it did. So those are different situations than situations where the statute of limitations or the statute of repose are set to bar a wrongful death action from being brought. Let me ask you to switch gears here a minute, if you would, please. And I've got some questions about, okay, looks like on April 21st of 2008, the trial judge grants summary judgment to some of the defendants, the defendants that are here today. On two grounds, and specifically sets out, okay, I'm granting summary judgment, A, because they're immune under the statute, and B, because of the statute of limitation. You file a motion to reconsider the trial, the plaintiff files a motion to reconsider, asking the court to reconsider only the issue of the statute of limitation. So would you agree, even had you, the judge says you're right, you didn't vote the statute of limitations, but the prior order that says summary judgment was granted on the immunity is still in effect, and you're still out the door, correct? Well, two answers to that question. I think there was a ruling, I don't think the actual summary judgment was entered until April 21st, if I'm not mistaken. April 21st. Right, I don't believe the summary judgment, there was only one summary judgment in this case, not two summary judgments, one summary judgment. And then secondly, I don't necessarily agree with that, because there's still the issue regarding Section 3-108 intended amendment that trial counsel wished to make in this case. And the argument there was that an additional allegation that she had made against Dr. Meister was that he had failed to properly supervise the interpretation of the pap smear slide. And the argument is that that provision, that you can bring a claim for a failure to supervise if the conduct rises to the level of willful and wanton, that was raised with the trial court. But the trial court never really considered that issue, what the court said was, since there is no willful and wanton exception within Sections 6-105 or 6-106, I need not consider that question. So no, the answer to your question, Your Honor, would be no, even if we were to lose on the two immunities, or one or two of the immunity issues in this case, it would still be that remaining question whether that issue should have been addressed. So that's one reason why this Court needs to address it. The grant of summary judgment, in other words, if these defendants are immune, no matter what, if these defendants are immune, the pleadings haven't been amended to allege some other cause of action, and the pleading hasn't been allowed. Once the court grants summary judgment as to some point, and you've got other defendants out there, and says this is final and appealable, at the end of 30 days, that order is not only final and appealable, but after 30 days it can no longer be appealed. And it doesn't matter whether the trial judge is right or wrong. After 30 days, that order is no longer appealable. There's a couple things that I hear, and I may be mishearing, Your Honor, but if this is the jurisdictional issue in this case that the court is raising, the only difference, of course, is that this is a Rule 304 appeal. Rule 304 appeals are permissible when one party or a single separate claim has been completely resolved. In this case, the wrongful death count was a single count, and there were two arguments against that count. Counsel has two minutes. So you would not be able to take an appeal from this case simply on the basis of the decision with respect to the Tort Immunity Act. You wouldn't? You would not be able to take an appeal simply on the basis of the Tort Immunity Act issue, because the summary judgment, there was only a single count in this case, and that count had not been finally resolved because there was a post-trial motion file. I mean, there was a motion for reconsideration file. As to the statute of limitations. As to the statute of limitations. The summary judgment motion was brought in two sections, one immunity and one statute of limitations. I said, okay, they're immune, which all by itself would terminate the litigation as to those defendants. Right. B, and statute of limitations. Okay. Grants a summary judgment in two sections. Same order, but it says you're immune. B, statute of limitations. Motion to reconsider file. So then he asks the court to reconsider. It's that portion of that session which says the statute of limitations. So why wasn't the summary judgment asked to, on the immunity issue, find one appealable after 30 days? And that's the, you've seen this argument before. Yes, I have. Well, if you look at Rule 303, it says that you can take an appeal after the last post-trial motion is decided. The last post-trial motion in this case was the motion for reconsideration. That was not decided until August. So that's why we had to wait until August to do so. We're complying with Supreme Court Rule 303. Counsel's time. Thank you. Thank you, Counsel. Counsel, you may respond. If it pleases the Court, Richard Hickey on behalf of CGH, Kate Neary, Dr. Meister. For the Court, I'd just address the last issue first. I was going to address a different issue, but to follow up on that. Since I was trial counsel involved, I just want to make it clear. When the motion for summary judgment was filed, as I pointed out in my brief, it clearly said different grounds, different headings, different paragraphs. When we appeared before the trial court, he actually entered, as it shows in the record, two different briefing schedules. There were supplemental briefs on the statute of limitations issue, supplemental replies, supplemental response. Supplemental briefs on the Tort Immunity Act issues. All supplemental. I just heard that there was only one summary judgment issue. Well, if we looked at the record, page C, 1095, and its appendix, page 5, the actual order has separate orders entered on each motion. I know this because I drafted it. It says, these defendants' motion for summary judgment based on the statute of limitations is granted, and the cause against these defendants are dismissed with prejudice. Two, these defendants' motion for summary judgment based on statutory immunity under Section 105 and 106A is granted, and the defendants are dismissed with prejudice. Three, the ruling is final and appealable pursuant to Supreme Court Rule 304A. Just follow the appellate law. And that's how we've been instructed to do it, and that's how it was written. So I just don't want there to be any confusion. Well, let me—would it not have been clearer and maybe more accurate if you had said these rulings instead of this ruling? There was no doubt or lack of clarity in anyone in this room who had been arguing. Remember, this court, Judge Sines had given us four hours of argument in January, a supplemental two-hour argument in March, and then a supplemental argument here in April. He had ruled on them completely and entirely. This wasn't something where this was going to be mailed to counsel afterward to create confusion, Your Honor. With all due respect, there was no one in that room that was confused as we were about these issues. So, in retrospect, could I have taken two different— I'm not questioning whether he ruled on the issues. The question is, is this a single, indivisible ruling that is—the appeal time has stayed until the last summary judgment, until the last motion directed at this ruling, or are these separate rulings, each of which is independently appealable? I believe it's separate rulings, each independently appealable, and that's why it was written as two separate rulings on two separate summary judgment motions. The question was, but then you yourself referred to it as this ruling in the singular. That's my— I have no response to that other than drafting it at that time without there being any concern or really confusion in that courtroom, Judge. I can just assure you that. As far as Your Honor's question, what if, just hypothetically, there was just a ruling on tort immunity, and there was 304A language there? Counsel's just argued that that's not appealable. I think all of the case law under 304A would disagree with that, that that is not appealable. We obviously wouldn't have this basis of confusion with two other bases there. Then we'd have a different case, wouldn't we? We would have a different case on the jurisdictional argument, which I have asserted in motion to dismiss the appeal in accordance with the case law and the directors of the court, that if there's moot issues, that the court would not have to decide that. So to the extent of the mootness argument, if I'd used an S on the end, if that's what that's going to revolve around, I don't know how to respond to that other than I wish I'd used an S on the end of it so we wouldn't be here on that issue. But I don't think that that changes the legal rights or the legal analysis in the case. That's the best I can address that, Your Honor. Thank you. On the issue of the tort immunity, if I may just switch and address that for just one moment. What this issue of the distinction the counsel's raising at the appellate court, which I believe is a creative argument, that there's a difference between inadequate and incorrect. As I put in my brief, I want the justices to consider what they're asking here. They're asking this court to engraft statutory language on it that would say, quote, for the purpose of interpreting this statute, a physical exam that leads to a court, quote, incorrect, close quote diagnosis, should be deemed to be adequate physical exam. And therefore, no immunity should be granted. And then you have the language out of Michigan Admin that says you can't add anything that would be absurd or unjust or inconsistent with the purpose of the statute. And that would be totally absurd and unjust and inconsistent with the statute. I believe it's a new argument raised at the time of this appeal, which would not be proper, was not raised in the trial court. There's no case law to support that. And it's inconsistent with the existing case law. Let me give you an example. The Willis case. Now, I know counsel says Willis was not decided correctly, but obviously we feel it was decided correctly. I'm familiar with Willis. I was appellate counsel with Willis. So I address this. What you had there is Dr. Muthuswamy, who is making an analysis and looking at various diagnostic data and diagnosis sarcoidosis. And they're saying, boy, you should have diagnosed Hodgkin's lymphoma. The immunities raised, they changed that and said, oh, we're not saying it was a misdiagnosis. You mistreated and you didn't follow up properly on Hodgkin's lymphoma. And the court said, no, you can couch and change your allegations and your insertions all different ways, but this is basically a misdiagnosis case. And modern medicine is part of it. We're not going to go for that. Dr. Sancy, who is a radiologist, no contact with the patient at all, nothing whatsoever, interpreted a gallium scan. And she interpreted that as consistent with sarcoidosis. I believe the evidence shows that the young man had sarcoidosis. That's what she diagnosed. And they said, oh, you misdiagnosed it. You should have diagnosed cancer. Then when the immunities raised as part of the appellate process, they changed. And they said, well, no, the issue is really failing to communicate a suspicion and start the diagnostic process. And the appellate court in Willis felt, well, that's part of making a diagnosis, the diagnostic process itself. So it granted immunity in that case. Very similar to our own. In Mabry, the patient came in shortness of breath and asthma, was treated for that. The assertions by the expert in that case were they should have interpreted the arterial blood gas differently. There was an incorrect interpretation that she'll let them over to suspect pulmonary embolism. It's just like what we have here. Arterial blood gases do not diagnose a pulmonary embolism. No one says it does. They said that the x-ray that the other physicians looked at showed a healer density that they think is consistent with the pulmonary embolism. X-ray doesn't diagnose pulmonary embolism. It's part of the diagnostic process. So they said it was an incorrect interpretation of the x-ray. But it should have moved along. And the court in Mabry said that is exactly the kind of conduct immunity. This is really the diagnosis part of the diagnostic process. What we have in this case, the case before you, an interpretation of the pap smear. And you've seen quotes in the briefs of some of the statement. Well, is it going to be mild atypia, moderate, severe carcinoma in situ, or frank carcinoma? No one says a pap smear is definitively diagnostic. What you do is you take that, and then you move and do the next test. Just as in Mabry, they said, jeez, if you had correctly interpreted the arterial blood gas, you would have ordered a VQ scan, a ventilation perfusion scan, to make a diagnosis. That conduct was immune in Mabry. It's immune in our case. We have the Wilkerson case, which is really hard to get around. Because that involves a pap smear. And it involves a cell attack. And an interpretation of a pap smear that they believed was incorrect. In Mabry, the court even points out that the testimony was, you don't make a definitive diagnosis of cancer from a pap smear. But it's part of this process that you move along. And so they were saying, jeez, you didn't correctly interpret and follow up on this pap smear. That's exactly what we have here. And it was found to be immune. The problem with the plaintiff's argument, inadequate is different than incorrect, is that that argument has been tried and rejected. And the fact pattern is too similar in other cases. Your Honor, on this issue of the definition, and what does the definition actually mean, I just want to point out that the Supreme Court laid out the definition. And the definition that's being referred to in some of these other cases is being taken from the Supreme Court's own language. So the request by the appellant in this case is for you, this court, to reject the Supreme Court's acceptance of the definition. And I would point out, it's not just a legal dictionary. Getting that point, I've got to switch back and forth here. But they not only quote from Webster's, but they also quote from the Sloan-Dorland medical dictionary, medical legal dictionary, the art of distinguishing one disease from another as a determination of the nature of disease. Later on, they talk about Stedman's medical dictionary, denoting diagnosis, determination of the nature of a disease. See, what's being diagnosed here is what is on the slide. And there's a lot in the briefs. In pathology, you have tissue slice. You make a pathologic diagnosis. In cytology, you have a smear of individual cells. You make a cytologic diagnosis. And then those trigger and go to other things. So while I understand the argument that the plaintiff is making and advocating, it's unfortunately inconsistent with the facts, inconsistent with the science, and completely inconsistent with the law. Before I move to statute of limitations, does the bench have any questions on this tort immunity? Very quickly on the statute of limitations, if I may address that. We have some key dates here. June 23, 2000 is the date Ms. Heminger sees Dr. LeMay with the problem. And he performs the exam, and he has suspicions, and he does a path smear. He asks her to come back. She doesn't. Dr. Meister reviews the slide and issues the report on June 27, 2000. On December 15, 2000, she begins her treatment for cancer. She's already received the diagnosis, and she's beginning treatment. December 23, 2000, the date the plaintiff asserts is the date of discovery. Everybody agrees it's a one-year statute. That means her cause of action is extinguished December 23, 2001. It's extinguished. She gathered records. It's not disputed in the trial court. She was gathering records December of 2001. It hired people to look at them, but chose not to file an action. In the statute of limitations, it extinguished any cause of action. What's happening in the briefs is they keep assuming that there was a cause of action on the date of her death. But there wasn't. And that's just a very, very important distinction. Counsel can say that Real v. Kim is misplaced or Malinowski is misplaced, but there's the Varelis case. And the Varelis case is from the Illinois Supreme Court, and it addresses the same thing. If an action, it looks at the exact same language. If a cause of action would still exist, excuse me, the decedent's right to pursue a claim for damages if death had not ensued. Would you agree that if she dies with a cause of action, the kids or their representative has until the children are 18 plus 2? Yes, Your Honor. If she had died hypothetically on December 10, 2000, with a cause of action, the husband in this case, I think, would still be barred because he waited so long. But the children, I would be defending that case under Illinois law. We can argue whether it's right or wrong. That's Illinois law. But that's not what happened here. I mean, that's the problem. The Supreme Court goes on and says the rule proposed by the plaintiffs, which would be ignore whether a cause of action exists, would create all kinds of problems. The Supreme Court talks about it would discourage settlements because then everybody would be reluctant to conclude claims prior to somebody's death. They would try to hold on and then get the death. Can you finish your thought? There would be difficulties in identifying every potential beneficiary of a live person and securing releases from all of them. And it goes on five more things, but it also says, and this is important, this is the Supreme Court. The rule being proposed by plaintiffs would ultimately result in a, quote, new super cause of action. One that cannot be extinguished by settlement with an injured party during his lifetime, cannot be extinguished by satisfying a judgment awarded to the injured party during his lifetime, and cannot be defeated by a failure of the injured party to have brought suit within the statutory period during his lifetime. Thank you. We reject that. Thank you very much for your patience. Thank you, counsel. That's all you may have this morning. I'm going to address some of the remarks backwards, forwards. First, counsel raises the case of Borellis. Now, Borellis is completely different in this case. In Borellis, what was involved was a judgment had been obtained on the same injury prior to the death of the deceased. No judgment had been obtained in this case on Tina Heminger's injury prior to her death. In fact, none had been filed. But that's a factual distinction between the Borellis case and this case. And I think one thing we should not lose sight of here is that the Wrongful Death Act is a statutory cause of action. The claimant on the Wrongful Death Act is not the deceased individual. It's the personal representative who brings actions on behalf of the beneficiary, the next of kin, the surviving spouse. And also, the Wrongful Death Act, unlike other derivative claims, such as a loss of consortium claim, has its own separate statute of limitations. There's a provision in the Code of Civil Procedure that on loss of consortium claims, you use the same statute of limitations as would the injured party use. That's not the same here with the wrongful death claim. Secondly, with respect to the Tort Immunity Act issues, the distinction I'm trying to draw is that in the Tort Immunity Act, the legislature appears to have been very precise in each and every one of those provisions in terms of what activity they're addressing. And what I'm saying with respect to 6105 and 6106 is the legislature said in 105 we're immunizing failure to conduct a physical exam, failure to conduct an adequate physical exam, and in section 6106 we're immunizing the diagnosis or the failure to diagnose. We're not immunizing processes. We're immunizing these particular activities. And that's the distinction I'm trying to draw here. What's the purpose of the process? I mean, these processes aren't performed for the purpose of having a process. You know, let's have some more processes. Aren't they performed for a reason, either to help with a physical exam or to lead to a diagnosis? Then why have a section 6105 that addresses physical exams and why have a section 6106 that addresses diagnosis? It would seem to me that if that's what the legislature intended, you'd do away with 6105 and you'd simply say 6106 applies to the process. It applies to all investigations, everything that is involved in reaching a diagnosis. From the moment you walk into a doctor's office to the moment that a disease is diagnosed, all of that is swept in under 6106. And I would say that that is totally inconsistent with the precision the legislature used in the Tort Immunity Act, and it makes absolutely no sense. Lastly, I want to be clear. There was one final order in this case, and that final order was entered on April the 27th. April the 21st, I'm sorry. And the Supreme Court clearly states that the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or if a timely post-trial motion directed against the judgment is filed within 30 days after entry of the order disposing of the last pending post-judgment motion. So I think clearly under the Supreme Court Rule 303, this notice of appeal was timely filed. If the Court has no further questions in this case, I would ask the Court to reverse the trial court. Thank you for your time. Thank you, Counsel. The Court will stand in recess for the next panel to proceed with the next case. And we will take this case under advisement, and we'll receive a decision.